IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM J. PLAZAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV675 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff William J. Plazas ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on June 16, 2104, alleging a disability onset date of December 21, 2011, later amended to April 1, 2012. (Tr. at 19, 178-85.)[1] His claim was denied initially (Tr. at 87-95, 108-16), and that determination was upheld on reconsideration (Tr. at 96-105, 118-25). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 126.) Plaintiff, along

---

[1] Transcript citations refer to the Administrative Record [Doc. #5].

with his attorney, a Spanish interpreter, and an impartial vocational expert, attended the subsequent hearing on May 12, 2016. (Tr. at 19.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 47), and, on May 23, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-8).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between April 1, 2012, his alleged onset date, and December 31, 2012, his date last insured. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments:

> degenerative disc disease, affective disorder, and anxiety disorder.

(Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21-23.) Therefore, the ALJ assessed Plaintiff's RFC as follows:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; push and/or pull as much as [he] can lift/carry. He would be able to alternate to standing for one hour after every one hour of sitting. He can frequently reach overhead and all other directions with the left upper extremity. He can frequently handle and finger with the left upper extremity. He can

occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, and crawl. He cannot be exposed to unprotected heights, moving mechanical parts, or extreme cold. He can perform simple, routine, and repetitive tasks.

(Tr. at 23.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 45.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 46.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 47.)

Plaintiff, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), now raises three challenges to the ALJ's mental RFC assessment. Specifically, he contends that the RFC fails to account for Plaintiff's (1) moderate limitations in concentration, persistence, and pace, (2) mild limitations in social functioning, and (3) mild limitations in activities of daily living. Plaintiff also challenges the ALJ's physical RFC assessment, arguing that substantial evidence fails to support a finding that Plaintiff could perform light work where the treating physician opinion evidence supports a ten-pound lifting restriction. After careful consideration of the record, the Court agrees that the RFC fails to properly account for Plaintiff's or address Plaintiff's moderate limitations in concentration, persistence, and pace in accordance with Mascio. Because this error requires remand, the Court need not consider the additional issues raised by Plaintiff.

A. Concentration, persistence, or pace

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that where such limitations are reflected at step three, the ALJ should address those limitations

in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently

7

accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 23.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to "simple, routine, and repetitive tasks" with no further mental restrictions. (Id.) The issue, therefore, is whether the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why Plaintiff's moderate limitation at step three did not translate into any additional RFC limitations. See, e.g., Jones, 2015 WL 5056784, at *3-4; Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *5-6 (W.D.N.C. Aug. 25, 2015); Walker v. Colvin, No. 6:14-cv-00025, 2015 WL 5138281, at *11 (W.D. Va. Aug. 31, 2015).

Previously, this Court has held that an ALJ may account for her omission of limitations specifically addressing a plaintiff's ability to stay on task through proper reliance on medical opinion evidence. See, e.g., Davis v. Berryhill, 1:17CV372, 2018 WL 1726248, at *8 (M.D.N.C. Apr. 6, 2018); Ingram v. Berryhill, 1:17CV17, 2018 WL 1054511, at *4 (M.D.N.C. Feb. 23, 2018); Trent v. Berryhill, 1:16CV89, 2017 WL 1409574, at *10 (M.D.N.C. Apr. 20, 2017). Most frequently, such evidence consists of one or more psychologist's or psychiatrist's findings that the plaintiff can perform simple, routine, repetitive tasks despite his moderate limitations in concentration, persistence, or pace. Id. Here, however, the ALJ did not base her omission of concentration or pace limitations on medical opinions or any other substantial evidence. No treating providers evaluated Plaintiff's mental functional limitations, and the

State agency psychological consultants at the initial and reconsideration levels both found insufficient evidence of a mental impairment as of the date last insured. (Tr. at 92, 103.) Significantly, the ALJ gave the consultants' opinions no weight, "as additional records received at the hearing level show [Plaintiff] has severe mental impairments." (Tr. at 44.) The ALJ included Plaintiff's severe mental impairments, namely anxiety and affective disorder, at step two of the sequential analysis (Tr. at 21), and, at step three, found that they caused moderate difficulties with regard to concentration, persistence, or pace (Tr. at 23). Later in the opinion, the ALJ noted that Plaintiff testified regarding his anxiety and depression, noting that he "gets lost or his mind wanders" and "he does not finish what he starts around the house due to physical limitation and mental issues." (Tr. at 25). Having made the determination that Plaintiff had moderate difficulties with regard to concentration, persistence, and pace, the ALJ was required under Mascio to either (1) address Plaintiff's limited ability to stay on task when assessing his RFC or (2) explain why such limitations do not affect Plaintiff's ability to work. Mascio 780 F.3d at 638. However, the ALJ failed to make such a finding or further address Plaintiff's limitations in concentration, persistence and pace. Specifically, the ALJ noted only that:

> [Plaintiff] has been diagnosed with depression and anxiety and has taken psychotropic medications at times. However, he has not sought out mental health treatment or continued use of medication. The [ALJ] finds the mental restrictions in the residual functional capacity are sufficient to address the claimant's mental impairments.

(Tr. at 42.) This analysis fails to specifically address the previously-determined moderate difficulties and concentration, persistence, and pace, and in the circumstances fails to build a

"logical bridge" to support the ALJ's determination.  Under the Fourth Circuit's decision in Mascio, remand is required.[4]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g).  Defendant's Motion for Judgment on the Pleadings

---

[4] Having reached this determination, the Court need not reach the remainder of the contentions raised by Plaintiff.  The Court does note, however, that it appears that remand would also be required based on the ALJ's failure to explain the basis for the lifting determination in this case.  Specifically, the ALJ determined that Plaintiff was capable of light work, defined as lifting 20 pounds occasionally and 10 pounds frequently. (Tr. at 23.)  However, all of the medical providers in this case opined that Plaintiff was limited to lifting no more than 10 pounds.  Specifically, the records reflect that Plaintiff was injured in a workplace accident on November 3, 2010. (Tr. at 307-08.) After the accident, his treating physician, Dr. Carnerio, opined that Plaintiff was limited to lifting no more than 10 to 15 pounds, by notation on November 30, 2010 (Tr. at 356) and December 14, 2010 (Tr. at 361.), on January 10, 2011 (Tr. at 367-68), and on February 21, 2011 (Tr. at 390-92).  A physical therapist likewise opined a few weeks later, on May 13, 2011, that Plaintiff could not lift over 10 pounds.  (Tr. at 411.)  A few weeks later, on June 7, 2011, a medical evaluation was conducted by Dr. Rowan, who likewise opined that Plaintiff was limited to lifting 10 pounds.  (Tr. at 429.)  Two weeks later, on June 24, 2011, Dr. Scott Sanitate began treating Plaintiff and limited Plaintiff to lifting no more than 10 pounds.  (Tr. at 457, 460). Dr. Sanitate confirmed that this limitation remained the same for at least the next four years, by opinion on July 22, 2011 (Tr. at 468, 472), August 12, 2011 (Tr. at 475), August 26, 2011 (Tr. at 478), September 23, 2011 (Tr. at 483), October 14, 2011 (Tr. at 487), November 18, 2011 (Tr. at 492-494), November 21, 2011 (Tr. at 491); December 2, 2011 (Tr. at 495), December 23, 2011 (Tr. at 500), January 20, 2012 (Tr. at 503), February 10, 2012 (Tr. at 504), March 16, 2012 (Tr. at 508), <u>during the relevant period on April 13, 2012 (Tr. at 510), May 10, 2012 (Tr. at 513), June 8, 2012 (Tr. at 515), July 18, 2012 (Tr. at 518), September 12, 2012 (Tr. at 521, 524), October 24, 2012 (Tr. at 526), December 5, 2012 (Tr. at 528)</u>, and continuing thereafter on January 9, 2013 (Tr. at 533), February 20, 2013 (Tr. at 534), March 13, 2013 (Tr. at 537), April 22, 2013 (Tr. at 540), June 18, 2013 (Tr. at 546), July 31, 2013 (Tr. at 548), December 4, 2013 (Tr. at 554), January 15, 2014 (Tr. at 556), March 19, 2014 (Tr. at 561), December 17, 2014 (Tr. at 440), April 1, 2015 (Tr. at 438), June 24, 2015 (Tr. at 447), and September 23, 2015 (Tr. at 442).  Particularly as to Dr. Sanitate, the ALJ gave the opinions partial weight because "the opinions appear to be more in the realm of temporary work restrictions than long-term assessments of function."  (Tr. at 44.)  However, the ALJ also noted that Dr. Sanitate included the same 10 pound lifting limitation with a finding that Plaintiff was at maximum medical improvement (Tr. at 44, 543-44), and the ALJ acknowledged that "in the final analysis, the consistent restriction of lifting 10 pounds or less from 2011 to 2013 does go[] to [Plaintiff's] functional abilities, which did not appear to change during that period of time."  (Tr. at 44.)  Despite this acknowledgment, the ALJ fails to provide any other basis for rejecting Dr. Sanitate's opinion as to the lifting limitation, which creates potential issues with regard to the application of the treating physician rule in effect at the time, and Defendant cannot provide post hoc rationalizations not relied upon by the ALJ.  The Court further notes that there was no consultative examination, possibly due to the need for an interpreter (Tr. at 272), and no state agency opinion finding an ability to lift any specific amount, so it is not clear how the ALJ determined that Plaintiff was capable of lifting 20 pounds occasionally.  Thus, the decision fails to provide a "logical bridge" to support this analysis, and the ALJ's conclusion does not appear to be supported by substantial evidence in the record.  These issues can be addressed further in light of the remand required above.

[Doc. #9] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #7] should be GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, that request should be denied.

This, the 22nd day of August, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge